**450**

**Ardie McBREARTY, Appellant,**

v.

**UNITED STATES TAXPAYERS UNION and all Board Members of Same; Armin Moths, Treasurer of the United States Taxpayers Union; and Frank Brockway, Secretary of the United States Taxpayers Union, Appellees.**

No. 81–2120.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 11, 1982.

Decided Jan. 18, 1982.

Rehearing and Rehearing En Banc Denied March 9, 1982.

Richard Hipp, Fayetteville, Ark., for appellee.

Before HEANEY, HENLEY and McMILLIAN, Circuit Judges.

PER CURIAM.

Plaintiff Ardie McBrearty seeks reversal of the district court's [1] order dismissing his breach of contract action. The district court concluded that the portion of the agreement which McBrearty sought to have enforced was void as against public policy and dismissed the suit with prejudice. We affirm.

McBrearty alleged that in 1977 he became a member of the United States Taxpayers Union (USTU). In the "Declaration of Client Membership Agreement," USTU guaranteed, *inter alia*, "that ... in the event a client member should be incarcerated for a time, the United States Taxpayers Union shall meet all necessary personal and family obligations of said individual as determined by the [USTU Board]." Additional language indicated that "all costs incurred in the defense of a client member" would be paid by the Union. In 1979, following his conviction for violations of the federal tax laws, McBrearty was incarcerated for a period of four months. After his "necessary personal and family" expenses during his incarceration were not paid by USTU, McBrearty initiated this action, naming as defendants both USTU and several individual members of its Board. The defendants moved to dismiss the suit on various grounds; following a hearing, the district court, *sua sponte*, found the purported contract to be "void as against public policy." The court reasoned that USTU's promise to pay defense and other expenses during a member's incarceration for tax violations amounted to an agreement to insure against the results of a criminal act. Such a bargain, the court concluded, contravened public policy and was therefore unenforceable.

Our review of the record convinces us that the district court was correct. As

1. The Honorable Paul X Williams, Chief Judge, United States District Court for the Western District of Arkansas.

a general rule, an agreement which contravenes some recognizable public policy is void. *Cf. Sachs v. Commissioner,* 277 F.2d 879, 883 (8th Cir.), *cert. denied,* 364 U.S. 833, 81 S.Ct. 63, 5 L.Ed.2d 59 (1960) (agreement to pay penalty which might be imposed upon person found guilty of violating the law would be tainted with illegality and unenforceable) (dictum). *See generally* J. Calamari & J. Perillo, The Law of Contracts ch. 22 (2d ed. 1977); Restatement (Second) of Contracts § 320 *et seq.* (Tent. Draft No. 12, 1977). Like the district court, we conclude that the McBrearty-USTU contract encouraged violations of the federal tax laws through the "guarantees" to pay defense and family expenses during a member's imprisonment for tax violations. The overall tenet of USTU implies such an objective; while the membership agreement does not expressly urge members to violate the tax laws, it does provide in part that "all client members are encouraged to refuse payment of all unconstitutional taxes." In short, we agree with the district court's conclusion that the agreement's promise to pay defense and family expenses is unenforceable. The order of dismissal is therefore affirmed.[2]

**Clifford DAVIS, Appellant,**

v.

STEPHENSON, Circuit Judge.

Appellant Clifford Davis seeks habeas corpus relief pursuant to 28 U.S.C. § 2254.

**2.** We also find no error in the district court's unwillingness to order the refund of the annual dues paid by McBrearty to USTU. As a general rule, courts will leave the parties to an illegal contract where it finds them. This result generally obtains even where performance by one party to the agreement has been entered. *See*

Davis was convicted of possession of controlled substances as a result of a search of his apartment. Davis' principal contention is that the Nebraska state court abused its discretion by refusing to grant a continuance to allow Davis to produce the testimony of James Washington and that this action materially prejudiced the appellant. The district court [1] agreed that the continuance should have been granted but held that this decision had not materially prejudiced Davis and thus denied the habeas petition. We affirm.

In 1976, Davis was convicted of unlawful possession with intent to deliver a controlled substance (heroin) and of illegal possession of a controlled substance (phencyclidine), among other offenses. *See State v. Davis*, 199 Neb. 165, 256 N.W.2d 678, 679 (1977). The state's case against Davis consisted primarily of evidence found in the petitioner's apartment during a search of the premises. This search was conducted under the authority of a warrant which was issued on the basis of information provided by a confidential informant.

Davis' defense at trial was that he was the victim of a conspiracy conducted by the Omaha police force and that the controlled substances had been "planted" in his apartment. *See State v. Davis*, 203 Neb. 284, 278 N.W.2d 351, 353 (1979). Prior to trial, Davis' attorney attempted to discover the name of the confidential informant used to procure the search warrant. On December 23, 1975, six working days prior to trial, the state orally informed the petitioner's counsel that the informant was one James Washington. Although the state knew that Washington was at that time in jail in San Francisco, Washington's location was not given to the defense counsel.[2]

By December 25, Davis' counsel, Ivory Griggs, had learned through independent means the whereabouts of Washington. Griggs spoke by phone with Washington that day. Washington supported Davis' defense. Washington said he knew of Davis but could not identify him, that he had not been in Davis' apartment and that he was the confidential informant. Washington was hesitant to testify, however.

Griggs again spoke with Washington on Friday, January 2. Griggs had another lawyer from the public defender's office, Thomas Riley, listen to the conversation. In this phone call Washington again supported Davis' defense. Washington said that the drugs were planted in Davis' apartment, that he had merely notified the Omaha police when the drugs were planted and that he would be willing to testify if given the opportunity. Washington also said that he had a tape recording of a conversation between two vice squad officers which would support his story.

On January 5, the day the trial was scheduled to begin, Davis' counsel filed a motion for a continuance supported by affidavits from Griggs and Riley concerning the phone conversation with Washington. The motion was denied and, as noted, Davis was convicted. During the trial, defense counsel attempted to have Riley testify about Washington's statements during the January 2nd phone conversation but this evidence was not admitted. The conviction

---

*generally* J. Calamari & J. Perillo, The Law of Contracts § 22–5 *et seq.* (2d ed. 1977).