**AIR–SEA FORWARDERS, INC.,**
Plaintiff–Appellant,

v.

**UNITED STATES, Defendant–Appellee.**

No. 98–5034.

United States Court of Appeals,
Federal Circuit.

Jan. 21, 1999.

Kenneth S. Nankin, Law Offices of Kenneth S. Nankin, Washington, DC, argued for plaintiff-appellant.

Ronald G. Morgan, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, argued for defendant-appellee. With him on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Kirk T. Manhardt, Assistant Director. Of counsel on the brief was Kathleen A. McGinn, Associate General Counsel, Central Intelligence Agency, Washington, DC.

Before NEWMAN, MICHEL, and LOURIE, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Air–Sea Forwarders, Inc. (Air–Sea) appeals the decision of the United States Court of Federal Claims,[1] granting summary judgment to the United States on the alternate grounds that (1) Air–Sea settled all claims

---

1. *Air–Sea Forwarders, Inc. v. United States,* 39     Fed. Cl. 434 (1997).

against the United States arising from its relationship with the Air Asia Company, or (2) the government can not be sued on the asserted ground in view of the *"Totten* defense" concerning secret contracts, *see Totten v. United States,* 92 U.S. 105, 23 L.Ed. 605 (1875). The decision of the Court of Federal Claims is affirmed on the ground of settlement; we do not reach the alternate ruling on the ground of the *Totten* defense.

## Background

Air–Sea was a freight-forwarding and customshouse brokerage company. Since 1950 it provided various commercial, financial, and export services to Air Asia, then a "proprietary company" of the Central Intelligence Agency, under oral and written agreements. Air–Sea did not perform intelligence activities, but some of its services were established by Air Asia and the CIA to conceal the true nature of their activities. These activities and relationships are described in the several judicial opinions that have issued, and need not be repeated.

After Air Asia summarily terminated the arrangement with Air–Sea in 1981, Air–Sea filed suit against Air Asia and a related company E–Systems, Inc. in the United States District Court for the Central District of California, asserting various claims due to the termination. Upon judgment in favor of Air–Sea, Air Asia appealed to the Ninth Circuit. During these proceedings Air–Sea also submitted a claim to the CIA, requesting payment for accounting services for the maintenance by Air–Sea of a bank account in its name for the use and benefit of Air Asia and the CIA, an account that was still in existence. The CIA denied Air–Sea's claim, and Air–Sea filed suit against the United States in the Court of Federal Claims. That court granted the government's motion for summary judgment, and this appeal followed.

## The California Settlement Agreement

■ After protracted litigation in California, *see Air–Sea Forwarders, Inc. v. Air Asia Co., Ltd.,* 880 F.2d 176 (9th Cir.1989), in June 1996 Air–Sea entered into an Agreement for Settlement, Release, and Accord and Satisfaction with Air Asia and E–Systems, wherein Air–Sea released all claims against Air Asia, E–Systems, and their past and present "alter egos and shareholders." The relevant provisions of the settlement agreement are:

3. Plaintiff absolutely and forever releases and discharges Defendants of and from any and all claims, demands, damages, debts, liabilities ... and causes of action of every kind and nature whatsoever ... which it now has, owns or holds, or at any time before ever had, owned or held, as encompassed in Plaintiff's Complaint in the above-referenced lawsuit ... ("released matters").

\* \* \*

5. While this release resolves all assertions of damage related to released matters as specified in paragraph 3, it does not extend to any rights or remedies for matters which Plaintiff may have against any third party, including the United States Government.

\* \* \*

8. The releases in this Agreement shall extend and inure to the benefit of each released party and each of their past and present ... alter egos [and] shareholders....

Air–Sea points out that in paragraph 5 it expressly reserved its claims against "any third party, including the United States Government." The Court of Federal Claims reasoned that if the United States were an alter ego or shareholder of Air Asia, as those terms are used in paragraph 8, then Air–Sea must be deemed to have settled this claim against the United States in accordance with paragraph 3.

■ ■ Air–Sea argues that an express reservation takes precedence over a general release of unnamed alter egos or shareholders. As a general rule of contract interpretation, an express reservation indeed dominates a general provision. *See Hughes Communications Galaxy, Inc. v. United States,* 998 F.2d 953, 958 (Fed.Cir.1993) (" 'Where specific and general terms in a contract are in conflict, those which relate to a particular matter control over the more general language.' ") (quoting *Hills Materials Co. v. Rice,* 982 F.2d 514, 517 (Fed.Cir.1992)); *Restatement (Second) of Contracts,* § 203(c) ("specific

terms and exact terms are given greater weight than general language").

 However, an agreement is not to be read in a way that places its provisions in conflict, when it is reasonable to read the provisions in harmony. The reservation by Air–Sea of its rights and remedies against the United States is reasonable when read as directed to claims other than the "released matters" of paragraph 3, but does not include claims within the scope of the "released matters." Paragraph 5, by its terms, does not remove any of the "released matters" from the settlement terms of paragraph 3 and preserve them for separate suit by Air–Sea against the United States. This is not a matter of a specific provision controlling over a general one, but a matter in which the provisions must be read together in order to implement the substance and purpose of the entire agreement.

The claim that Air–Sea now makes against the United States relates to the maintenance of a bank account in Air–Sea's name, for use by Air Asia and the CIA. This claim falls squarely within the scope of the settlement, for this activity was part of the total relationship among these entities. No basis is provided upon which this claim can reasonably be deemed to have survived, in isolation, for separate assertion against the United States. *See In re Mission Insurance Co.*, 41 Cal. App.4th 828, 48 Cal.Rptr.2d 209, 216 (Cal. App.1995) ("Because appellants knew they had a claim ... they had a duty to specifically exclude that claim from the release agreement.")

 Although Air–Sea states that the amount of this claim continued to grow after the settlement, because Air–Sea continued to maintain the account while attempting to resolve the ownership of the moneys remaining in that account, this did not create a separate claim against the United States when the only basis of the claim is as an "alter ego" of Air Asia. The Court of Federal Claims correctly pointed out that "if the CIA were not an alter ego of Air Asia and E–Systems, the complaint would fail for lack of privity." 39 Fed. Cl. at 438. Whatever the scope of the reservation in paragraph 5, it does not include matters settled in paragraph 3.

The grant of summary judgment on the ground of settlement is affirmed.

### Conclusion

Since the settlement agreement comprehends Air–Sea's asserted claim against the United States, the decision of the Court of Federal Claims is affirmed on this ground. We do not reach the alternate ruling that the doctrine set forth in *Totten* bars this action.

### Costs

Each party shall bear its costs.

*AFFIRMED.*