# United States Court of Appeals for the Federal Circuit

* Corrected: May 29, 2009

2008-1171

Pete Geren, SECRETARY OF THE ARMY,

Appellant,

v.

TECOM, INC.,

Appellee.

Domenique Kirchner, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for appellant. With her on the brief were Jeanne E. Davidson, Director, and Bryant G. Snee, Trial Attorney. Of counsel on the brief was Craig S. Clarke, Deputy Chief, Contract and Fiscal Law Division, United States Army Legal Services Agency, United States Department of the Army, of Arlington, Virginia.

Jonathan M. Bailey, Bailey & Bailey, P.C., of San Antonio, Texas, argued for appellee.

Appealed from: Armed Services Board of Contract Appeals

Administrative Judge Rollin A. Van Broekhoven

* Correction in spelling of Senior Trial Attorney's name.

# United States Court of Appeals for the Federal Circuit

2008-1171

Pete Geren, SECRETARY OF THE ARMY,

Appellant,

v.

TECOM, INC.,

Appellee.

Appeal from the Armed Services Board of Contract Appeals in no. 53884.

_____

DECIDED:    May 19, 2009

_____

Before LOURIE, DYK, and PROST, <u>Circuit Judges</u>.

Opinion for the court filed by <u>Circuit Judge</u> DYK.  Dissenting opinion filed by <u>Circuit Judge</u> LOURIE.

DYK, <u>Circuit Judge</u>.

The government appeals from the decision of the Armed Services Board of Contract Appeals ("Board") granting summary judgment in favor of Tecom, Inc., and holding that defense costs and settlement payments associated with a Title VII sexual harassment suit are allowable costs under the Federal Acquisition Regulations ("FAR"). <u>Tecom Inc.</u>, ASBCA No. 53884, 54461, 2007 WL 2899660 (Sept. 21, 2007) ("<u>Board Decision</u>").  We hold that under the contract the costs associated with an adverse judgment would not be allowable, and that under our decision in <u>Boeing North American, Inc. v. Roche</u>, 298 F.3d 1274 (Fed. Cir. 2002), defense and settlement costs

are allowable only if the contractor can show that the plaintiff in the Title VII suit had very little likelihood of success. Accordingly, we reverse and remand for further proceedings.

## BACKGROUND

The material facts are not in dispute. Tecom was awarded a negotiated cost reimbursement contract for military housing maintenance at Fort Hood, Texas, on December 13, 1995. The contract incorporated by reference numerous provisions of the FAR, including FAR § 52.222-26 Equal Opportunity (Apr. 1984), which states, in part:

> The Contractor shall not discriminate against any employee or applicant for employment because of race, color, religion, sex, or national origin.

48 C.F.R. § 52.222-26. Sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) ("Title VII"), is clearly a breach of this provision of the contract; the contractor makes no argument to the contrary.

During the performance of the contract, a former employee sued Tecom under Title VII, alleging sexual harassment and firing in retaliation for filing a sexual harassment charge. The conduct forming the basis of the allegation occurred while the employee was working on the government contract. The allegations, if proved, would violate Title VII.

In the course of defending this Title VII litigation, Tecom incurred legal fees totaling $96,163.16. Tecom ultimately decided to settle the matter with the former employee for $50,000. The terms of the settlement agreement stated that the

settlement did not include "back pay."  The settlement also stated that Tecom did not admit to any wrongdoing.

On September 2, 1999, Tecom requested reimbursement from the government in the amount of $146,163.16, representing defense costs and settlement payments related to the Title VII litigation.  Tecom sought to include its legal fees as an indirect cost charged to its G&A expense pool.  Tecom sought to bill its settlement cost as a direct cost of the contract.

Tecom claimed that it did not violate the law and the allegations of the former employee were false, but that the cost of trying the case would have been approximately $300,000.  Tecom argued that the defense and settlement costs were allowable under the contract and the FAR, and were reasonable because the settlement costs were less than the costs of going to trial, even if Tecom had prevailed.

The government denied that these expenses were allowable, and, on June 22, 2001, Tecom converted its request for payment to a formal claim and requested a contracting officer's final decision.  After the statutory period elapsed without a final decision, the claim was deemed denied by the Contracting Officer pursuant to 41 U.S.C. § 605(c)(5), and Tecom filed a notice of appeal to the Board.

On cross-motions for summary judgment, the government argued that the attorney's fees and damages associated with a judgment of liability under a Title VII claim were not allowable costs, and that, under Boeing, 298 F.3d at 1288-89, the cost of settling such claims would also be unallowable unless the contractor proved that the suit had very little likelihood of success on the merits.  The contractor argued that the cost of

settling a Title VII suit (except for an explicit backpay award)[1] is always allowable, notwithstanding <u>Boeing</u>, because <u>Boeing</u> was limited to suits that involved allegations of fraud or similar misconduct.

The Board granted the contractor's motion, and held that <u>Boeing</u> did not apply where there were no charges that the contractor had engaged in criminal conduct, fraud, or violations of the Major Fraud Act of 1988. The Board remanded to the contracting officer for the limited purpose of a "determination of the reasonable amounts to be reimbursed appellant consistent with this decision and the Allowable Cost and Payment clause." <u>Board Decision</u>, slip op. at 29. The parties agree that the decision of the Board was a final decision subject to appeal under 41 U.S.C. § 607(g)(1).[2]

The government timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(10). We review the Board's grant of summary judgment de novo. <u>Lear Siegler Servs., Inc. v. Rumsfeld</u>, 457 F.3d 1262, 1266 (Fed. Cir. 2006). Legal determinations of the Board, including interpretation of statutes, regulations, and contracts are reviewed without deference. 41 U.S.C. § 609(b).

---

[1] FAR § 31.205-6(h) addresses backpay, and states that "[b]ackpay is unallowable" with certain exceptions, including that backpay "resulting from underpaid work actually performed [is] allowable, if required by a negotiated settlement, order, or court decree."

[2] We agree that the Board's decision is final within the meaning of 28 U.S.C. § 1295(a)(10) because the contracting officer's "decision" that was on review before the Board was a claim deemed denied under 41 U.S.C. § 605(c)(5). <u>Dewey Elecs. Corp. v. United States</u>, 803 F.2d 650, 653-58 (Fed. Cir. 1986). As such, the only issue decided by the contracting officer was allowability, and, in deciding this issue, the Board therefore decided the only issue that was before it on review, remanding for a determination only of the amount to be allowed (an issue not previously decided by the contracting officer). <u>Id.</u>

The issue on appeal is whether the costs of defending and settling a Title VII suit are allowable costs under this government contract. Under the FAR, the costs incurred by the contractor are "allowable only when the cost complies with all of the following requirements: (1) Reasonableness. (2) Allocability. (3) [The CAS accounting principles]. (4) Terms of the contract. (5) Any limitations set forth in this subpart." FAR § 31.201-2. We have previously held that the regulations distinguish between allocability, which "is an accounting concept involving the relationship between incurred costs and the . . . [contracts] to which those costs are charged," and allowability, which "concerns whether a particular cost can be recovered from the government in whole or in part." Boeing, 298 F.3d at 1280. Only the fourth and fifth elements are at issue in this appeal. Both relate to the allowability of costs.

The fourth element of allowable costs requires that the "cost complies with [the] . . . [t]erms of the contract." FAR § 31.201-2. This condition on allowable costs can be found in regulatory provisions governing government contracts going back decades, including the former Armed Services Procurement Regulations. 32 C.F.R. § 7.203-4 (Cum. Sup. 1960) (stating that costs must "be allowable in accordance with . . . [t]he terms of this contract"); see 23 Fed. Reg. 6345, 6347 (Aug. 19, 1958).

The fifth element of allowable costs requires that "the cost complies with . . . [a]ny limitations set forth in this subpart." FAR § 31.201-2. This refers to costs made unallowable in FAR subpart 31.2. The FAR specifically provides that a number of costs are either allowable or not allowable. However, as FAR § 31.204 makes clear, the FAR "does not cover every element of cost. Failure to include any item of cost does not

imply that it is either allowable or unallowable." As we discussed in <u>Boeing</u>, where neither the contract nor the FAR dictates the treatment of specific costs, we must determine how those costs are to be treated by looking to "the principles and standards in this subpart and the treatment of similar or related selected items." 298 F.3d at 1285 (emphasis omitted) (quoting FAR § 31.204(c)).

As described in <u>Boeing</u>, even though costs of professional services and costs of settling litigation are generally allowable, this is not always the case. Where the claimed costs are associated with a settlement agreement we conduct a two-step inquiry in addressing the allowability of such costs: (1) we ask whether, if an adverse judgment were reached, the damages, costs, and attorney's fees would be allowable; (2) if not, we ask whether the costs of settlement would be allowable. <u>Boeing</u>, 298 F.3d at 1285-89.

I

As to the first step—the judgment costs—the contractor at oral argument first conceded that the costs associated with an adverse judgment in a Title VII suit would not be allowable, and later in oral argument sought to retract that concession. Oral Arg., Jan. 6, 2009, 16:12-30; 20:44-21:32, <u>available at</u> http://oralarguments.cafc. uscourts.gov/mp3/2008-1171.mp3. We conclude that the initial concession was well taken because the damages, costs, and attorney's fees associated with a violation of Title VII would not be allowable under this contract.

Like the present case, <u>Boeing</u> involved a claim for the cost of settling a private lawsuit. In <u>Boeing</u> the underlying private suit was a shareholder suit against, inter alia, fourteen directors of the company. 298 F.3d at 1276. Prior to the underlying

shareholder suit at issue in Boeing, the contractor had been convicted by the government of, inter alia, fraud against the government. Id. at 1277. After this conviction and the resulting fines and penalties, the shareholder suit was brought. The shareholder suit was based largely on the criminal convictions that were allegedly incurred because the directors of the company "fail[ed] to establish internal controls sufficient" to prevent fraud. Id.

We noted that FAR § 31.205-47 specifically dealt with the criminal convictions and fraud against the government. See Boeing, 298 F.3d at 1287 n.14.[3] However, the

---

[3]    FAR § 31.205-47 addresses certain costs related to legal proceedings:
(b) Costs incurred in connection with any proceeding brought by a Federal, State, local, or foreign government for violation of . . . law or regulation by the contractor . . . , costs incurred in connection with any proceeding brought by a third party in the name of the United States under the False Claims Act, 31 U.S.C. § 3730, are unallowable if the result is—
      (1) In a criminal proceeding, a conviction;
      (2) In a civil or administrative proceeding, either a finding of contractor liability where the proceeding involves an allegation of fraud or similar misconduct or imposition of a monetary penalty where the proceeding does not involve an allegation of fraud or similar misconduct;
      * * *
      (4) Disposition of the matter by consent or compromise if the proceeding could have led to any of the outcomes listed in subparagraphs (b)(1) through (3) of this subsection (but see paragraphs (c) and (d) of this subsection);
(c) (1) To the extent they are not otherwise unallowable, costs incurred in connection with any proceeding under paragraph (b) of this subsection commenced by the United States that is resolved by consent or compromise pursuant to an agreement entered into between the contractor and the United States, and which are unallowable solely because of paragraph (b) of this subsection, may be allowed to the extent specifically provided in such agreement.

FAR did not specifically address shareholder suits alleging a failure to prevent criminal wrongdoing. To determine whether the cost of defending the shareholder suit in this case would be allowable, we asked whether the shareholder suit was "similar or related" to the costs of the underlying convictions as described in FAR § 31.204(c). Boeing, 298 F.3d at 1285-86. We first held that costs of shareholder suits are not similar to costs incurred in connection with criminal convictions or any other disallowed cost in the FAR. Id. at 1286. However, we held that this particular shareholder suit was "related" to the convictions. Id. at 1287. Judgment against the contractor in the suit would require "a judicial determination that the [contractor's] directors had failed to maintain adequate controls to prevent the occurrence of the wrongdoing against the government." Id. This, we held, established a sufficiently direct relationship to the disallowed costs of the criminal convictions, that the cost of defending against an adverse judgment in the shareholder suit would also be disallowed. Id. at 1288-89.

The Ninth Circuit followed this aspect of our Boeing decision in Southwest Marine, Inc. v. United States, 535 F.3d 1012 (9th Cir. 2008). Southwest Marine involved an adjudication of liability for civil penalties under the Clean Water Act in a citizen suit pursuant to 33 U.S.C. § 1365(a). Id. at 1014-15. Under the FAR, "costs

---

(2) In the event of a settlement of any proceeding brought by a third party under the False Claims Act in which the United States did not intervene, reasonable costs incurred by the contractor in connection with such a proceeding, that are not otherwise unallowable by regulation or by separate agreement with the United States, may be allowed if the contracting officer, in consultation with his or her legal advisor, determines that there was very little likelihood that the third party would have been successful on the merits.

(emphases added).

incurred in connection with any proceeding brought by a third party in the name of the United States under the False Claims Act, 31 U.S.C. § 3730, are unallowable if the result is . . . imposition of a monetary penalty." FAR § 31.205-47(b). The court held citizen suits under the Clean Water Act that resulted in civil penalties were "similar" to these costs disallowed in the FAR in False Claims Act proceedings. Sw. Marine, 535 F.3d at 1017. As a result, the costs in Southwest Marine were not allowable. Id.

The parties agree that, in general, neither the statute nor the FAR explicitly discusses the allowability of costs associated with adjudicated Title VII violations. The government argues that, under FAR § 31.205-47 and our decision in Boeing, any costs associated with a judgment of contractor violation of Federal law would not be allowable. Alternatively, the government argues that, because punitive damages are recoverable under Title VII, a violation of Title VII would be similar or related to disallowed monetary penalties under FAR § 31.205-15.[4] However, we need not go so far to resolve this case. We find that the cost of an adverse judgment in this case would be unallowable in any event, because a contractor violation of Title VII would breach this contract, and costs related to such a breach would not be allowable.

The FAR states specifically that costs are allowable only if the "cost complies with [the] . . . [t]erms of the contract." FAR § 31.201-2. As the government points out, the contract specifically required the contractor not to discriminate on the basis of sex: "During perform[ance of] this contract, the Contractor agrees . . . [t]he Contractor shall

---

[4]     FAR § 31.205-15 addresses fines and penalties, and states that "[c]osts of fines and penalties resulting from violations of . . . Federal, State, local, or foreign laws and regulations, are unallowable except when incurred as a result of compliance with specific terms and conditions of the contract."

not discriminate against any employee or applicant for employment because of race, color, religion, sex, or national origin." J.A. 4; FAR § 52.222-26; see 42 U.S.C. § 2000e-2(a). Sexual harassment is a form of sex discrimination. Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 66-67 (1986). The violation of Title VII by sex discrimination or retaliation is a textbook breach of this contractual provision. Thus, if sexual harassment and retaliation were established at trial, the costs of the defense and the judgment would certainly result from a breach of the contract.

Under the decision of our predecessor court in Dade Brothers, Inc. v. United States, costs resulting from a breach of a contractual obligation are not allowable costs under the contract. 325 F.2d 239, 240 (Ct. Cl. 1963). The contract in Dade preceded the modern system of uniform procurement regulations; nonetheless, the contract in Dade was very explicit that the cost of defending third party suits was generally allowable. The court noted that:

> [T]he contractor would be entitled to reimbursement of "the cost and expense of such litigation, including judgments and court costs, allowances rendered or awarded in connection with suits for wages, overtime or salaries, and reasonable attorney's fees for private counsel."

Id. at 239-40 (quoting the contract).

However, in Dade the cost-plus-fixed-fee government contract also contained a provision specifically stating that "[t]he Contractor will abide by all the terms and conditions of the Union Agreement with [the relevant union]." Dade Def.'s Br. 6 (filed Feb. 28, 1963). Fifty-four employees who were members of the union sued the contractor and certain union officials in state court, alleging that the employees were denied seniority rights they were entitled to under the union contract as a result of a

2008-1171                                    10

conspiracy among the employer and these certain union officials. The contractor was found liable by a jury, and the verdict was upheld on appeal to the highest level of the state court system. Dade, 325 F.2d at 239.

The contractor sought to treat the cost of defending the suit in state court and the cost of satisfying the adverse judgment as allowable costs under the contract. The Court of Claims held that these costs were not allowable costs:

> [T]here is no ground for recovery against the Government. Neither the wording nor the policy of the litigation-reimbursement article of the government contract authorizes reimbursement of expenses incurred because the contractor breached its agreement with the Government or failed to perform that contract faithfully.

Id. at 240 (emphasis added). After the date of the contract in Dade, the government regulations were amended to include this principle, which has been explicitly articulated in uniform government contract regulations since 1958. 32 C.F.R. § 7.203-4 (Cum. Supp. 1960) (stating that costs must be "allowable in accordance with . . . [t]he terms of this contract"); see 23 Fed. Reg. 6345, 6347 (Aug. 19, 1958). The modern FAR as well explicitly articulates this principle, stating that a cost is allowable only if the "cost complies with . . . [t]he terms of this contract." FAR § 31.201-2.

In this case, the alleged discrimination would clearly violate the contract, and thus costs associated with an adverse judgment on the merits would not be allowable. This conclusion is underscored by the clear public policy of Title VII. For example, the Supreme Court in NAACP v. Federal Power Commission considered whether the Federal Power Commission ("FPC") had authority to disallow the costs of unlawful discriminatory employment practices of regulatees in setting rates. 425 U.S. 662, 668 (1976). The FPC had statutory authority to set "just and reasonable" rates for the

transmission and sale of electricity.  Id. at 666.  The Court of Appeals had held that this authority included the power to prevent the cost of the regulatees' discriminatory employment practices from being reflected in the rate charged and thus passed on to consumers:

> The Commission's task in protecting the consumer against exploitation can be alternatively described as the task of seeing that no unnecessary or illegitimate costs are passed along to that consumer. Costs incurred by reason of a regulatee's choosing to practice racial discrimination are within the reach of that responsibility. . . . [For example,] duplicative labor costs incurred in the form of back pay recoveries . . . [and] the costs of legal proceedings.

Id. at 666-67 (quoting NAACP v. Fed. Power Comm'n, 520 F.2d 432, 444) (emphasis added).  The Supreme Court agreed, and held that costs resulting from violations of Title VII were unreasonable and should not be part of the rate passed on to consumers:

> To the extent that such costs are demonstrably the product of a regulatee's discriminatory employment practices, the Commission should disallow them. For example, when a company complies with a backpay award resulting from a finding of employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., it pays twice for work that was performed only once.

Id. at 668 (emphases added).  This case clearly demonstrates the expansive scope of the public policy preventing the government from being complicit in paying for discriminatory employment practices.   Just as it is not "just and reasonable" for a company to pass the costs of Title VII violations on to consumers, similarly it is unreasonable to pass such costs on to the government in a contract context.

Tecom provides no reason why the violation of Title VII alleged in this case, if established, would not also establish a breach of contract.  Instead, Tecom would have us limit Dade, without any principled basis, to the specific contractual facts of that case.

In support of limiting Dade to its facts, Tecom argues that if private lawsuits establishing a violation of the contract are unallowable that will mean virtually any lawsuit will result in unallowable costs because the Permits and Responsibilities Clause, FAR § 52.236-7, incorporated in construction contracts by FAR § 36.507, makes it a violation of the contract to violate any law.

Tecom's policy concerns are founded on an incorrect premise. The Permits and Responsibilities Clause does not broadly make failure to comply with the law a violation of the contract. Rather, the Permits and Responsibilities Clause simply states that the contractor is "<u>responsible</u> for obtaining any necessary licenses and permits, and for complying with any Federal, State, and municipal laws, codes, and regulations applicable to the performance of the work" so that the contractor's failure to perform is not excused if impeded by the contractor's failure to comply with legal obligations. FAR § 52.236-7 (emphasis added).

## II

The second step of this inquiry—how to treat a settlement agreement when an adverse adjudication would not be allowable—need only be discussed briefly, as the issue is squarely addressed by our decision in Boeing. We first noted that costs of settling suits brought by the federal government would be unallowable if the costs of satisfying a judgment would be unallowable:

> This policy judgment appears to be based on the assumption that suits brought by government entities are in most situations likely to be meritorious, thus justifying a bright line rule that does not look behind the settlement. Where a suit is brought by a private party and the suit is settled, however, such a blanket assumption is not appropriate.

298 F.3d at 1288.  Thus, the policy of the FAR was to disallow the cost of settling suits that were likely to have been meritorious and therefore would have been disallowed if not settled.  But we also concluded that no blanket assumption that the suit was meritorious applied to private suits.  Rather, where an adverse judgment would be unallowable in a private suit, the settlement of the private suit is similar to the FAR provisions concerning private suits under the False Claims Act:

> The regulations suggest that where a private suit is involved an inquiry is necessary to determine whether the plaintiff was likely to prevail.  This approach is most clearly reflected in the FAR regulations' treatment of settlements of private suits brought under the False Claims Act where the government does not intervene. FAR § 31.205-47(c)(2) (2000). Such costs may be allowable if the contracting officer determines that there was "very little likelihood that the third party [plaintiffs] would have been successful on the merits." Id.

Id. (emphases added, footnotes omitted, and alteration in original).  As this quotation clearly shows, in private suits "an inquiry is necessary to determine whether the plaintiff was likely to prevail."  Id. We found this approach "most clearly reflected" in regulations relating to fraud but did not limit our holding to that situation.[5]  Id.  We held that, under the principles and standards of the FAR, whenever the costs of a judgment would be unallowable, the cost of a settlement would also be unallowable unless the contractor could prove that the private suit had very little likelihood of success on the merits.  Id.

While Boeing involved only defense costs and not settlement payments, Boeing applies equally to settlement payments.  Settlement payments are related to the

---

[5]    Although subsection (c)(2) was added in 1996 and the contract was signed in 1995, as discussed in Boeing, (c)(2) was added to clarify the application of cost principles, and applies retroactively.  Boeing, 298 F.3d at 1288 n.17.  To the extent that the Board suggested otherwise, the Board erred.

damages or penalties that would have been associated with an adverse judgment. Indeed, Tecom does not argue otherwise. Where the damages or penalties paid in the event of an adverse judgment are disallowed, the settlement cost is also unallowable unless the contractor can establish that the private Title VII plaintiff had very little likelihood of success on the merits.

The dissent does not dispute that a Title VII judgment against the contractor would not have been allowable in this case. However, the dissent suggests that (apart from fraud situations) settlement costs should be allowable, regardless of how clearly meritorious the claim, and urges that Boeing adopted a rule limited to fraud settlements. We think that Boeing clearly adopted a broader rule applicable to private settlements generally where the defense and judgment costs would be disallowed in the case of a final adjudication. Indeed, that was the whole point of Boeing—to determine the applicable rule for similar or related cases not covered by the regulations. Boeing concluded that "[f]or the costs to be allowable in a settlement situation (where the costs of an unsuccessful defense would be disallowed), Boeing must show that the allegations in the [underlying] action had 'very little likelihood of success on the merits.'" Id. at 1288-89.

The dissent suggests that applying the likelihood of success test to private settlements generally would be unwise. Dissent at 4-5. But the rule urged by the dissent would allow a contractor who engaged in conduct prohibited by the contract— where defense and judgment costs would be disallowed if it were tried to judgment—to nonetheless recover the defense and settlement costs if it resolved the case before judgment. It cannot be the policy of the FAR to permit a contractor who is certain to

lose on the merits to defeat disallowance by the simple expedient of settling before the litigation is concluded. The <u>Boeing</u> rule prevents such an outcome by applying a very little likelihood of success standard to all private settlements where defense and judgment costs would be disallowed if the case went to final judgment against the contractor.

CONCLUSION

We find that the Board erred in refusing to apply our decision in <u>Boeing</u> to the costs at issue in this case. To the extent that other decisions of the Board are inconsistent with this decision, they are no longer good law. We therefore reverse and remand for further proceedings consistent with this opinion.

<u>REVERSED and REMANDED</u>

COSTS

No costs.

# United States Court of Appeals for the Federal Circuit

2008-1171

Pete Geren, SECRETARY OF THE ARMY,

Appellant,

v.

TECOM, INC.,

Appellee.

Appeal from the Armed Services Board of Contract Appeals in no. 53884.

LOURIE, Circuit Judge, dissenting.

I respectfully dissent from the majority opinion, which reverses the decision of the Armed Services Board of Contract Appeals (the "Board") and extends Boeing North American, Inc. v. Roche, 298 F.3d 1272 (Fed. Cir. 2002), to reach the facts of this case. I believe that such an extension is unwarranted given the different factual background of the instant action.

In Boeing, this court faced the question of which standard should apply for determining the allowability of settlement costs of a shareholder derivative suit. That derivative suit, referred to as the Citron suit, was brought by private parties and alleged a breach of fiduciary duty by directors and officers of a corporation for "failing to establish internal controls sufficient to insure that the [c]orporation's business was carried on in a lawful manner." 298 F.3d at 1277 (quoting the complaint, alteration in original). Specifically, the parties agreed that "five instances of underlying misconduct"

were involved in the <u>Citron</u> suit: (1) a civil suit brought by the government under the False Claims Act; (2) criminal charges brought by the government for making false statements; (3) government allegations of defective pricing that resulted in indictments for fraud, mail fraud, and willfully making false statements and that, ultimately, led to a guilty plea to two counts of the indictment; (4) a civil <u>qui tam</u> suit, brought on behalf of the government under the False Claims Act; and (5) allegations of hazardous waste dumping and other environmental law violations. <u>Id.</u> Thus, although the lawsuit brought by private parties that resulted in settlement was on its face based on breach of fiduciary duty, four of the five instances of underlying misconduct involved false statements or fraud.

After determining that no regulation specifically addressed whether the defense costs of the <u>Citron</u> lawsuit were or were not allowable, the <u>Boeing</u> court concluded that the costs were not "similar" to costs specifically disallowed under the Federal Acquisition Regulations ("FAR") but were "related to" disallowed defense costs for a suit that resulted in criminal convictions of the directors. <u>Id.</u> at 1286-87. But, given that there was no judicial determination of wrongdoing because the parties settled, the <u>Boeing</u> court then had to determine whether the settlement costs of the <u>Citron</u> suit were allowable.

The court found that the regulations did not provide a blanket rule that stated that settlement costs for a private litigation should be disallowed if the costs for an unsuccessful defense of such a suit would have been disallowed. <u>Boeing</u>, 298 F.3d at 1287-88. The court presumed, however, that meritorious suits should be treated

differently from those that lacked merit and looked to the FAR for guidance as to whether the settlement costs of the Citron suit were allowable:

> The regulations suggest that where a private suit is involved an inquiry is necessary to determine whether the plaintiff was likely to prevail. This approach is most clearly reflected in the FAR regulations' treatment of settlements of private suits brought under the False Claims Act where the government does not intervene. Such costs may be allowable if the contracting officer determines that there was "very little likelihood that the third party [plaintiffs] would have been successful on the merits."

Id. at 1288 (quoting FAR § 31.205-47(c)(2), 48 C.F.R. § 31.205-47(c)(2)) (other citations omitted, alteration in original). The Boeing court concluded that the very little likelihood of success standard from FAR § 31.205-47(c)(2) was "an appropriate standard for private suits in the present context." Id. The Boeing court held, quoting the exact language of FAR § 31.205-47(c)(2), that "[f]or the costs to be allowable in a settlement situation (where the costs of an unsuccessful defense would be disallowed), Boeing must show that the allegations in the Citron action had 'very little likelihood of success on the merits.'" Id. at 1288-89.

It is clear to me from the analysis in Boeing that the very little likelihood of success standard, which is found in the FAR only in § 31.205-47(c)(2), was a far more "appropriate standard" for the facts of that case than for the present situation. FAR § 31.205-47(c)(2) specifically applies to "settlement of any proceeding brought by a third party under the False Claims Act in which the United States did not intervene." It does not apply to any and all settlements of lawsuits brought by private parties involving any and all types of allegations. As discussed above, the private suit that settled in Boeing involved several instances of fraudulent behavior and the making of false statements, including a qui tam suit brought under the False Claims Act. Clearly, the fact that FAR

§ 31.205-47(c)(2) specifically addresses a private suit under the False Claims Act lends support to the Boeing court's decision to utilize the very little likelihood of success language from that regulation as the standard of allowability of the settlement costs of the Citron suit.

Unlike Boeing, however, the case at hand does not present the same opportunity for analogizing to qui tam cases brought under the False Claims Act. There is no nexus between the facts of the private suit in this case, a sexual harassment suit filed by a former employee, and a lawsuit brought by a third party on behalf of the government that alleges fraud or similar misconduct. To apply Boeing here would be extending the reach of that decision, which looked to the very little likelihood of success language in a far more similar set of circumstances to what FAR § 31.205-47(c)(2) actually covers, to apply to any settlement of a lawsuit brought by a private party when the costs of an unsuccessful defense would be disallowed. Such an extension, in my opinion, is unwarranted given the specific applicability of FAR § 31.205-47(c)(2) to private suits brought under the False Claims Act in which the government does not intervene, and I believe the Board was correct in refusing to apply the Boeing standard in this case.

A final thought: Determining the likelihood of success in a law suit is not so easily done. If it were, we would not have so many suits, appeals, and reversals of decisions in our legal system generally. It is one thing to have that standard be a criterion for allowability of costs in defending a suit when fraud against the government is alleged. It is quite another to have that standard be the criterion in a suit involving two private parties, even when the subject matter relates to a government contract. The government has an interest in setting a higher barrier for the allowability of settlement

costs when it is the party allegedly being defrauded, and may in fact be suing for that fraud, than when it is two private parties who are contending. I therefore recoil from judicially extending that difficult-to-apply likelihood of success rule beyond its current borders. Finally, the whole point of a settlement generally is that neither party is assured of success and the law favors settlement of such disputes. Thus, I do not believe we as a court should extend the <u>Boeing</u> application of a regulation to settlements beyond fraud cases, where the government's interest is especially compelling.

For the foregoing reasons, I respectfully dissent.