# United States Court of Appeals for the Federal Circuit

---

**BECHTEL NATIONAL, INC.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2018-2055

---

Appeal from the United States Court of Federal Claims in No. 1:17-cv-00657-EDK, Judge Elaine Kaplan.

---

Decided: July 16, 2019

---

STEPHEN KNIGHT, Smith, Pachter, McWhorter, PLC, Tysons Corner, VA, argued for plaintiff-appellant. Also represented by EDMUND MICHAEL AMOROSI.

GEOFFREY MARTIN LONG, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by JOSEPH H. HUNT, ROBERT EDWARD KIRSCHMAN, JR., PATRICIA M. MCCARTHY.

---

Before NEWMAN, SCHALL, and DYK, *Circuit Judges.*

DYK, *Circuit Judge.*

Bechtel National, Inc. ("Bechtel") appeals from a decision of the United States Court of Federal Claims ("Claims Court") granting summary judgment in favor of the government. The Claims Court held that our decision in *Geren v. Tecom, Inc.*, 566 F.3d 1037 (Fed. Cir. 2009), precluded reimbursement of costs that Bechtel incurred in defending two sexual and racial discrimination and retaliation suits brought by former employees.

We hold that *Tecom* governs the allowability of Bechtel's defense costs and affirm the Claims Court's decision.

BACKGROUND

Between 1943 and 1990, the government produced plutonium for nuclear weapons at the Hanford Site in the state of Washington, leaving behind "approximately 56 million gallons of nuclear waste" stored in underground tanks. *Bechtel Nat'l, Inc. v. United States*, 137 Fed. Cl. 423, 425 (2018). On December 11, 2000, Bechtel was awarded a cost-plus-incentive fee contract by the Department of Energy ("DOE") "for the design, construction, and operation" of a nuclear waste treatment plant at the Hanford Site in Washington. *Id.* The contract incorporated by reference provisions of the Federal Acquisition Regulation ("FAR") and the Department of Energy Acquisition Regulation ("DEAR").

During performance of the contract, two former Bechtel employees at the Hanford Site separately sued Bechtel under 42 U.S.C. § 1981 and state law, alleging sexual and racial discrimination and subsequent retaliation for raising their complaints. Bechtel settled these lawsuits and then sought $500,000 in reimbursement from the DOE for the costs it incurred in defending the two suits. Bechtel did not seek reimbursement for the settlement payments related

to the litigation, likely because the settlement amounts were covered by insurance. The DOE provisionally approved Bechtel's request and reimbursed Bechtel for the full amount requested.

On May 11, 2016, the contracting officer issued a notice of intent to disallow the costs. The contracting officer informed Bechtel that "[he had] determined that the costs incurred by [Bechtel] in defending these matters [were] unallowable under the standards set forth in *Tecom*." *Bechtel*, 137 Fed. Cl. at 427 (alterations in original).

Bechtel responded on July 13, 2016, arguing that *Tecom* did not govern the allowability of the costs. Rather, it contended that a provision of the contract, DEAR 970.5204-31 (1997), "alone dictates the treatment and reimbursability of legal costs." J.A. 691. The DEAR provision, entitled "Insurance—litigation and claims," provides:

> (e) <u>Except as provided in subparagraphs (g) and (h) of this clause, or specifically disallowed elsewhere in this contract, the contractor shall be reimbursed</u> . . .
>
>> (2) For liabilities (and reasonable expenses incidental to such liabilities, including litigation costs) to third persons not compensated by insurance or otherwise . . . .
>
> (g) Notwithstanding any other provision of this contract, the contractor shall not be reimbursed for liabilities (and expenses incidental to such liabilities, including litigation costs, counsel fees, judgment and settlements)—
>
>> (1) <u>Which are otherwise unallowable</u> by law or the provisions of this contract . . . .
>
> (h) In addition to the cost reimbursement limitations contained in DEAR 970.3101-3, and notwithstanding any other provision of this contract, the

contractor's liabilities to third persons, including employees but excluding costs incidental to workers' compensation actions, (and any expenses incidental to such liabilities, including litigation costs, counsel fees, judgments and settlements) shall not be reimbursed if such liabilities were caused by contractor managerial personnel's

> (1) Willful misconduct,

> (2) Lack of good faith, or

> (3) Failure to exercise prudent business judgment . . . .

DEAR 970.5204-31 (emphases added).

On September 13, 2016, the contracting officer issued a final decision disallowing the costs. Because the government had already reimbursed Bechtel, the decision stated that "the government would offset the amount it had provisionally reimbursed Bechtel from future amounts the government owed to it as a result." *Bechtel*, 137 Fed. Cl. at 427.

On May 18, 2017, Bechtel brought suit in the Claims Court challenging the contracting officer's final decision and seeking reimbursement of the defense costs. *See* 41 U.S.C. § 7104(b)(1); 28 U.S.C. § 1491(a)(2). The parties filed cross-motions for summary judgment. The Claims Court granted the government's motion for summary judgment, concluding that *Tecom* provided the proper standard for determining whether the defense costs were allowable under the contract and holding that the costs were not allowable.

Bechtel timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3). We review a grant of summary judgment by the Claims Court de novo. *Northrop Grumman Computing Sys., Inc. v. United States*, 823 F.3d 1364, 1367 (Fed. Cir. 2016).

DISCUSSION

I

*Tecom* involved a dispute over whether costs associated with settling an employment discrimination lawsuit were allowable costs under a government contract that incorporated provisions of the FAR. 566 F.3d at 1040. "[A] former employee [had] sued Tecom under Title VII, alleging sexual harassment and firing in retaliation for filing a sexual harassment charge." *Id.* at 1039. The alleged conduct, if proven, would have violated Title VII. *Id.* After settling the suit, the contractor sought reimbursement from the government for defense costs and settlement payments associated with the lawsuit. *Id.*

The contract incorporated FAR 31.201-2, which states that costs incurred by the contractor are "allowable only when the cost complies with . . . [t]erms of the contract." *Id.* at 1040 (quoting FAR 31.201-2). One of the terms of the contract at issue was FAR 52.222-26 (1984), which provided that "[t]he Contractor shall not discriminate against any employee or applicant for employment because of race, color, religion, sex, or national origin." *Id.* at 1039 (quoting FAR 52.222-26).

We articulated a standard for determining when costs incurred by a contractor in defending and settling third party claims are allowable under a government contract: "(1) we ask whether, if an adverse judgment [had been] reached, the damages, costs, and attorney's fees would be allowable; (2) if not, we ask whether the costs of settlement would be allowable." *Id.* at 1041 (citing *Boeing N. Am., Inc. v. Roche*, 298 F.3d 1274, 1285–89 (Fed. Cir. 2002)).

As to the first step, we concluded that "the damages, costs, and attorney's fees associated with a violation of Title VII would not be allowable under this contract." *Id.* Because "[s]exual harassment is a form of sex

discrimination," we determined that "the alleged discrimination would [have] clearly violate[d] the contract." *Id.* at 1043–44. Thus, we held that "costs associated with an adverse judgment on the merits would not be allowable" under FAR 31.201-2. *Id.* at 1044. Our conclusion was "underscored by the clear public policy of Title VII," which "prevent[s] the government from being complicit in paying for discriminatory employment practices." *Id.* at 1044.

As to the second step—i.e., whether the costs are nonetheless allowable when the contractor settles before an adverse judgment—we determined that our decision in *Boeing* "squarely addressed" that issue. *Id.* at 1045. We held that, under *Boeing*, "[w]here the damages or penalties paid in the event of an adverse judgment are disallowed," settlement costs are also unallowable unless the contractor can establish that the plaintiff in the discrimination suit "had very little likelihood of success on the merits." *Id.* at 1046.

## II

The contract at issue here incorporated FAR 31.201-2 (2000) and FAR 52.222-26 (1999)—the very same provisions of the FAR that we held barred reimbursement in *Tecom*.[1] Further, although the former employees brought

---

[1]   Both the *Tecom* contract and the contract here incorporated the pre-2004 version of FAR 31.201-2, and in *Tecom*, we treated the pre-2004 version as equivalent to the post-2004 version. *See* 566 F.3d at 1039–40. The prefatory language of that section was revised in 2004 from "[t]he factors to be considered in determining whether a cost is allowable include the following" to "[a] cost is allowable only when the cost complies with all of the following requirements," *compare* FAR 31.201-2 (2000) *with* FAR 31.201-2 (2004), but the amendment was not a substantive change. In both instances "Terms of the contract"

their discrimination claims against Bechtel under § 1981 and state law, rather than under Title VII (as was the case in *Tecom*), sexual and racial discrimination in violation of § 1981 and state anti-discrimination law would be a textbook breach of FAR 52.222-26. Bechtel makes no argument to the contrary.

*Tecom* recognized that the analysis for determining whether the costs are allowable could change if there was a contract provision "dictat[ing] the treatment of specific costs." 566 F.3d at 1041. Bechtel argues that *Tecom* does not govern allowability of the costs here because the contract incorporated such a provision dictating the treatment of specific costs, namely DEAR 970.5204-31. That provision was not incorporated in the *Tecom* contract. According to Bechtel, that provision "makes costs incurred in defense of third party claims, including employment discrimination claims, presumptively allowable." Bechtel Op. Br. 21. We conclude that DEAR 970.5204-31 is not a specific provision making allowable the defense costs.

The DEAR provision generally provides for reimbursement of contractor liabilities to third parties and "litigation costs." DEAR 970.5204-31(e). This allowability provision is subject to certain exceptions. The provision makes clear in two separate places that costs disallowed by other

---

was listed. In promulgating the final rule, the agency made clear that the revision did not "constitute[] a major change in determining allowability" and merely made the language of the provision "consistent with established case law, *i.e.*, a cost must meet all five factors to be allowable." Federal Acquisition Regulation; General Provisions of the Cost Principles, 69 Fed. Reg. 17,764, 17,765 (Apr. 5, 2004). Bechtel does not argue there is a substantive difference between the pre-2004 and post-2004 versions.

provisions of the contract are not allowable. First, the DEAR provision states that

> [e]xcept as provided in subparagraphs (g) and (h) of the clause, <u>or specifically disallowed elsewhere in this contract</u>, the contractor shall be reimbursed . . . [f]or liabilities (and reasonable expenses incidental to such liabilities, including litigation costs) to third persons not compensated by insurance or otherwise.

*Id.* (emphasis added). Subparagraph (g), in turn, specifies that costs "[w]hich are otherwise unallowable by . . . the provisions of this contract" "shall not be reimbursed." *Id.* 970.5204-31(g). Subparagraph (h) provides additional exceptions to reimbursement, further specifying that costs otherwise allowable under the contract are not allowable if "caused by contractor managerial personnel's (1) [w]illful misconduct, (2) [l]lack of good faith, or (3) [f]ailure to exercise prudent business judgment." *Id.* 970.5204-31(h).

To be sure, subparagraph (h) imposes narrower restrictions on allowability of costs incurred in defending third party claims than the FAR, but DEAR 970.5204-31 does not override the FAR provisions that we interpreted in *Tecom* as disallowing those costs. Although DEAR 970.5204-31 specifically identifies a number of exceptions to reimbursement of costs arising from third party claims, it does not follow that all other defense costs are allowable. Rather, the DEAR provision merely imposes cumulative requirements on allowability and expressly makes the allowability of defense costs subject to both subparagraphs (g) and (h) *and* to other provisions of the contract.

Indeed, Bechtel admits that under its interpretation of the contract, the DEAR provision makes the amount of an adverse judgment and costs spent in unsuccessfully defending a discrimination suit allowable. But as we have explained, "pass[ing] such costs on to the government in a

contract context" would be contrary to public policy under the Supreme Court's decision in *NAACP v. Fed. Power Comm'n*, 425 U.S. 662 (1976). *Tecom*, 566 F.3d at 1044.

Bechtel relies on *Abraham v. Rockwell International Corp.*, 326 F.3d 1242 (Fed. Cir. 2003), to suggest that the DEAR provision should control over the FAR provisions. In *Abraham*, we held that a contract clause "particularly directed toward providing for the allowability of the very category of costs at issue" controlled over "a more general exclusionary clause." *Id.* at 1254. Thus, we concluded that the contractor's legal fees and other costs incurred in successfully defending against environmental criminal charges were recoverable under the contract. *Id.* But we recognized in that case that "there [wa]s a clear conflict [in the contract] between a clause that expressly provide[d] for the reimbursement of specific costs . . . and another clause . . . that purportedly require[d] the opposite result," and we had to "determine which of the conflicting terms control[led]." *Id.* at 1253–54. There is no such conflict between the DEAR and FAR provisions at issue here. Significantly, *Abraham* specifically recognized that the existence of carve outs in a general allowability provision that make the provision "subject to the express disallowance provisions of the contract" prevents there from being a conflict. *Id.* at 1250–51.

Bechtel also points to the regulatory history of the DEAR provision in support of its interpretation. *See* Acquisition Regulations; Department of Energy Management and Operating Contracts, 62 Fed. Reg. 34,842, 34,844–45 (June 27, 1997). In promulgating the final rule, the DOE "illustrate[d] how [the 'prudent business judgment' standard of DEAR 970.5204-31(h)] will operate in a typical third-party action" using "[a] sexual harassment suit . . . brought by an employee against the contractor" as an example in response to commenters who expressed concern over how the standard would be interpreted in practice. *Id.* at

34,844. However, this regulatory history does not suggest that defense costs associated with such a harassment suit would be allowed, nor does it state that other provisions of the FAR should be disregarded in determining whether the costs under the DEAR provision should be allowed.[2] Failure by the contractor to exercise "prudent business judgment" in incurring costs associated with third party claims is just one way that the costs may be disallowed.

We conclude that the standard articulated in *Tecom* applies to the costs at issue here. Thus, Bechtel's defense costs related to the discrimination suits are only allowable if Bechtel can show that the former employees "had very little likelihood of success." *Tecom*, 566 F.3d at 1039. Before the contracting officer, Bechtel argued that the former employees' claims had little likelihood of success on the merits. However, Bechtel abandoned that argument on appeal to the Claims Court. Therefore, we hold that the costs are not allowable under the contract.

Bechtel's remaining arguments do not require a contrary result. First, Bechtel contends that the DOE had reimbursed Bechtel for costs incurred in discrimination cases before *Tecom* and that the DOE's prior conduct supports interpreting the contract to allow such costs. But the DEAR provision is clear on its face. The parties' prior conduct is only relevant if the contract language is ambiguous.

---

[2]    Bechtel relies on a statement of the DOE in the Federal Register, which states: "The Department acknowledges that third-party actions, including employee discrimination complaints, are normal business risks, and is not seeking to shift all such risk to the contractor." Acquisition Regulations; Department of Energy Management and Operating Contracts, 62 Fed. Reg. at 34,845. But this regulatory history does not suggest that the costs here would necessarily be allowable.

*Topliff v. Topliff*, 122 U.S. 121, 131 (1887); *see also Agility Logistics Servs. Co. KSC v. Mattis*, 887 F.3d 1143, 1149 (Fed. Cir. 2018); *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1353 n.4, 1354–55 (Fed. Cir. 2004). Here, there is no ambiguity in the contract.

Second, Bechtel argues that if *Tecom* governs the costs here, then *Tecom*'s standard could be applied more broadly to disallow costs associated with "any and all alleged contract breaches," and that such a reading would be contrary to the contract. Bechtel Op. Br. 31. However, that issue is not presented, and we need not address it.

Third, Bechtel further contends that it is unfair to impose these burdens and risks on a contractor in Bechtel's position because "the long-standing foundation of DOE cost-type contracting is that [the] DOE assumes virtually all operational and financial risk, given the nature of the work being performed," and "contractors . . . might otherwise decline the work given the extreme risks associated with attempting to immobilize 56 million gallons of highly radioactive liquid waste." *Id.* at 29–30. But that is an argument for amending the contract requirements or the FAR provisions. It does not justify our reading the contract contrary to its express terms.

Finally, Bechtel argues that *Tecom* should be overruled. As a panel, we are bound by *Tecom*, and, in any event, Bechtel has not demonstrated that *Tecom* is in any way unsound such that the panel should recommend en banc review pursuant to Federal Circuit Rule 35.

CONCLUSION

The Claims Court correctly applied the standard in *Tecom* in determining whether Bechtel's defense costs were allowable under the contract. Because Bechtel did not challenge the contracting officer's determination that the

former employees' claims had more than a very little like-
lihood of success, we affirm.

**AFFIRMED**