NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SERGENT'S MECHANICAL SYSTEMS, INC., DBA SERGENT CONSTRUCTION,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2025-1116

---

Appeal from the United States Court of Federal Claims in No. 1:21-cv-01685-MHS, Chief Judge Matthew H. Solomson.

---

Decided:  May 21, 2026

---

JOSEPH WHITCOMB, Whitcomb, Selinsky, PC, Lakewood, CO, argued for plaintiff-appellant.

VINCENT DE PAUL PHILLIPS, JR., Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee.  Also represented by DEBORAH ANN BYNUM, MATTHEW JUDE CARHART, PATRICIA M. MCCARTHY, BRETT SHUMATE;

KATHLEEN RAMOS, Office of General Counsel, United States Department of Veterans Affairs, Arlington, TX.

————————————————

Before TARANTO, SCHALL, and CHEN, *Circuit Judges.*

TARANTO, *Circuit Judge.*

In 2021, the Department of Veterans Affairs (VA) terminated its 2020 contract with Sergent's Mechanical Systems, Inc. (d/b/a Sergent Construction) for default. VA did so after Sergent confirmed that it would not timely complete performance of the work required by the contract—work involving asbestos abatement and heating, ventilation, and air conditioning (HVAC) systems at a VA facility. Sergent sought relief from the termination under the Contract Disputes Act (CDA), 41 U.S.C. §§ 7101–7109, filing suit in the United States Court of Federal Claims (Claims Court). The Claims Court granted summary judgment in favor of VA in 2024, determining that VA properly terminated the contract for Sergent's default because no modification of the contract occurred and no circumstances excused Sergent's delay in performance. *Sergent's Mechanical Systems, Inc. v. United States*, 173 Fed. Cl. 56, 63–74, 76–77 (2024) (*Decision*). Sergent appealed, and we now affirm.

I

A

In June 2020, VA and Sergent entered into Contract No. 36C24820C0067 (Contract), in which Sergent agreed to perform certain HVAC and asbestos-abatement services at the C.W. Bill Young Medical Center in Bay Pines, Florida (Medical Center) by August 17, 2021. J.A. 64, 89, 338, 346. There is no genuinely disputed issue of material fact presented on appeal. *See* Appellant Opening Br. at 12–14; Appellee Br. at 20–23. The appeal focuses on three contested components of the Contract.

First, the Contract stated that the Medical Center would remain operational "24 hours a day 7 days a week" during the performance period.  J.A. 835.  For that reason, VA required that "any interruption in service must be scheduled and coordinated with the [Contracting Officer's Representative (COR)]."  *Id.*  Sergent agreed to seek permission from the COR, in writing, for any proposed outage in utility services seven or fifteen calendar days in advance of said outage, depending on the scale of the interruption.  J.A. 836–37.  The Contract made clear that VA had discretion in approving or denying a proposed outage in utility services and could reschedule an outage to when it would "cause least inconvenience" to the Medical Center.  *Id.*

Second, Sergent agreed to perform HVAC cooling-coil-replacement work between October 2020 and March 2021.  J.A. 499, 508, 1412.  The Contract clearly identified requirements for the to-be-installed cooling coil, stating "END" at the conclusion of the requirements section, *i.e.*, Section 23 82 16, of the Contract.  J.A. 1388–90.  Relevantly, the Contract specified the required diameter of the cooling coils: a "[m]inimum 16 mm (0.625 inch) tube diameter."  J.A. 1389.  In an addendum following a different section of the Contract, *i.e.*, Section 23 73 00, the Contract attached materials submitted by a different contractor in 2009 showing samples of cooling coils, some of which had smaller diameters than the Contract required Sergent to install.  *See* J.A. 1221–386.

Third, Sergent agreed to perform asbestos abatement as part of its renovation work.  Two sections of the Contract are relevant for understanding the extent of Sergent's asbestos-related duties: a section containing notes, J.A. 463–64; and Section 02 82 11 ("Traditional Asbestos Abatement"), J.A. 972, 982, 984, which is cross-referenced in the notes section, *see* J.A. 464.

Specifically, VA provided Sergent with "General Abatement Notes," "Architectural General Notes," and "General

Project Notes" that detailed the extent of Sergent's asbestos-abatement responsibilities. J.A. 464. The General Abatement Notes informed Sergent that the Contract contained estimates of the asbestos to be abated as part of the renovation project and that Sergent was responsible for understanding the extent of its abatement duties:

The following notes apply to all ductwork and all chilled water piping elbows potentially impacted by work of this project . . . .

1. Contractor shall remove all asbestos containing and asbestos contaminated materials indicated in these general notes, specifications and as shown on drawings, and dispose of as asbestos waste. Asbestos containing and asbestos contaminated materials include: non-friable mastic and/or seam sealer located on the ductwork and non-friable mastic on the CWS/CWR [*i.e.*, Chilled Water Supply/Chilled Water Return] pipe fitting insulation. Ductwork mastic and/or seam sealer and pipe fitting insulation with mastic is generally located above the suspended ceiling system.

2. **Contractor shall be responsible for field verifying the existing quantities and conditions of asbestos containing and asbestos contaminated materials** and immediately notifying the [COR] in writing of any discrepancies found.

[. . .]

11. There is **approximately** 800 linear feet of ductwork with asbesto[s] mastic and/or seam sealer distributed over 47 rooms/areas and approximately 20 each CWS/CWR pipe fittings to be removed and disposed of as asbestos. Contractor shall assume that all ductwork and CWS/CWR fittings shown on mechanical drawings for demolition

> contain non-friable asbestos in the mastics and/or
> seam sealers.

J.A. 464 (emphases added).[1] The Architectural General Notes then informed Sergent that it must "[r]emove completely all materials as indicated on the drawings and as required for new construction." *Id.* In addition, the General Project Notes clarified that Sergent's asbestos-abatement responsibilities may evolve as the renovation progresses, explaining:

> L. Asbestos is present in duct wraps and chilled water line elbows. Asbestos floor tile and mastic is present in many areas. Removal of floor tile is not required but **damage or removal generated by construction techniques or methods must be addressed and handled by the contractor**. Refer to General Abatement Notes [on] this sheet[,] **Specification Section 02 82 11** [J.A. 972] and the Hazmat "Targeted Survey Report" dated September 5, 2018, by Michael F. Durbin, Durbin Environmental Consultants, Inc. . . .

*Id.* (emphases added). Section 02 82 11 reiterated that the Contract merely provided estimates of the asbestos that Sergent was obligated to abate, stating:

> A. Below is a brief description of the **estimated quantities of asbestos containing materials to be abated**. These quantities are for informational purposes only and are based on the best information available at the time of the specification preparation. The **Contractor shall satisfy himself as the actual quantities to be abated**. **Nothing in this section may be interpreted as limiting the extent of work otherwise**

---

[1]    Capitalization is altered for all excerpts of J.A. 464.

> **required by this [C]ontract** and related documents.
>
> B. Removal, clean-up and disposal of non-friable asbestos containing materials (ACM) and asbestos/waste contaminated elements in an appropriate regulated area for the following approximate quantities;
>
> (800) linear feet of Mastic Material and/or Seam Sealer on Duct distributed over 47 Rooms/Areas
>
> (20) Each CWS/CWR Piping Insulation with Concealed and/or exposed Mastic Material on fittings 2" - 6" in diameter

J.A. 972 (Section 02 82 11, subsection 1.1.2) (emphases added). Sergent further agreed to "assume full responsibility and liability for compliance with all applicable Federal, State and Local regulations related to any and all aspects of the asbestos abatement project." J.A. 982 (Section 02 82 11, subsection 1.5.2). The Contract also explicitly incorporated Occupational Safety and Health Administration (OSHA) regulations and Federal Acquisition Regulations (FAR) that imposed obligations on Sergent related to its asbestos-abatement duties. *See, e.g.*, J.A. 982 (incorporating 29 C.F.R. § 1926.1101); J.A. 439 (incorporating 48 C.F.R. (FAR) § 52.236-7).

The Contract then identified VA's limited responsibilities related to asbestos abatement, specifying just two ancillary duties unrelated to the present appeal. J.A. 984 (Section 02 82 11, subsection 1.5.11). The Contract further specified that VA's duties "shall not release [Sergent] from any responsibility for OSHA compliance." *Id.*

## B

On August 18, 2020, VA issued its notice to proceed to Sergent, which, under the Contract, meant that the deadline for completion was to be August 17, 2021. J.A. 43;

*Decision*, at 59.   Soon thereafter, Sergent encountered problems with fulfilling its performance promises.  J.A. 47–50.

Regarding cooling coils: On August 20, 2020, Sergent made a "submittal" to VA, which, as relevant here, rejected it for noncompliance with the diameter requirements for the cooling coils.  *See* J.A. 1835.  A few weeks later, Sergent requested an equitable adjustment relating to the cooling coils, seeking $88,841.29 in additional compensation and a 60-day extension to the period of performance.  J.A. 1815–21.  Sergent reasoned that the Contract was unclear because Sergent had relied on diameters in samples from 2009 shown in the Section 23 73 00 addendum.  *See* J.A. 1818–21.  On September 17, 2020, VA denied the request, explaining that the addendum did not alter the Contract's applicable cooling-coil requirements.  J.A. 1989–92.

Regarding asbestos abatement: On October 30, 2020, Sergent submitted a request for information to VA, asking VA to identify "exactly where the 20 plus or minus elbows [containing asbestos] are located" and indicating it wished to receive more information about the "locations and quantities of" asbestos-containing materials.  J.A. 2001.  In response, VA's lead engineer at VA Bay Pines said he had some information but would ask his "Safety department" for help getting more information, J.A. 1408, which led to VA's providing Sergent reports in December 2020 and January 2021, J.A. 2027–75, 2090–158.

Regarding utility-services outages: In February 2021, VA set a three-hour ceiling on outages in the Medical Center's utility services.  J.A. 45, 67.

On February 19, 2021, VA issued a "Cure Notice" to Sergent, identifying multiple deficiencies in Sergent's performance and warning that, unless Sergent cured the deficiencies, VA "may terminate" the Contract for default.  J.A. 1636; *see* J.A. 1636–38.  For instance, VA expressed concern that Sergent had not begun its cooling-coil

replacements until January 2021, yet the Contract deadline for that work was March 2021.  J.A. 1636.  Sergent responded to the notice on February 26, 2021, requesting a "192-day time extension" to complete performance due to "unforeseen" asbestos-abatement issues and noting that "another time extension request may[ ] be forthcoming." J.A. 1645, *see* J.A. 1644–50.

VA sent a "Show Cause Notice" to Sergent on March 16, 2021, specifying various "conditions endangering performance" under the Contract, stating that VA was "considering terminating the [C]ontract . . . for default," and giving Sergent an opportunity to respond.  J.A. 1655–57. On March 22, 2021, Sergent submitted a "schedule deviation" request to VA, seeking to modify a component of the Contract and confirming that it "will not be able to replace all of the new cooling coils before March 31, 2021."  J.A. 2164–65.  Sergent included in its submission a new proposed schedule for replacement of the cooling coils, indicating that the renovation would be completed in August 2021.  J.A. 2165.  Sergent then specifically responded to the Show Cause Notice on March 26, 2021, arguing that termination for default was improper and providing an updated project schedule that contained a completion date of December 9, 2021.  J.A. 1659–72, 1674; *see* J.A. 1659–78.

VA terminated the Contract for default on March 31, 2021.  J.A. 2167–68.  In May 2021, Sergent submitted a certified claim to the contracting officer.  J.A. 1680–707. The contracting officer denied the claim on July 21, 2021. J.A. 1709–13.

## C

In August 2021, Sergent filed suit in the Claims Court, invoking its jurisdiction under 28 U.S.C. § 1491(a)(2).  J.A. 40–59.  Sergent challenged VA's termination for default, asserting, as relevant here, that its delays were excusable, J.A. 51–52 (First Am. Compl. ¶¶ 99–106), and also that VA had constructively altered the Contract, J.A. 54 (First Am.

Compl. ¶¶ 116–21). In September 2024, the Claims Court granted summary judgment in favor of VA. *Decision*, at 59. The Claims Court determined that Sergent was in default at the time of the Contract's termination because "there is no dispute that the schedules Sergent submitted after the cure notice only indicated completion dates after the contractual completion date." *Id.* at 66. The Claims Court then determined that Sergent had not established a genuine issue of material fact concerning its three theories of excusable delay (related to asbestos-abatement, the cooling-coil replacements, and VA's utility-service outage restrictions). *Id.* at 66–67. The Claims Court explained in detail why each of the alleged delays could not excuse Sergent's failure to perform, observing that the language of the Contract put Sergent on notice of its duties and the applicable requirements and VA's actions did not modify Sergent's responsibilities. *Id.* at 67–74, 76–77.

The Claims Court entered final judgment, and Sergent timely appealed. This court has jurisdiction 28 U.S.C. § 1295(a)(3).

## II

We "review a grant of summary judgment by the Court of Federal Claims de novo." *Anderson v. United States*, 23 F.4th 1357, 1361 (Fed. Cir. 2022). "Contract interpretation under the Contract Disputes Act is a question of law . . . over which we exercise complete and independent review." *States Roofing Corp. v. Winter*, 587 F.3d 1364, 1368 (Fed. Cir. 2009) (internal citation and quotation marks omitted).

Despite Sergent's arguments to the contrary, there is no material issue of fact presented on appeal. Sergent repudiated its contractual obligations when it submitted schedules to VA, following the cure notice, indicating that its performance would not be completed by the agreed-upon deadline. J.A. 1645–53, 1674–75. Unless there was a triable issue of excusable delay, or a contract modification undermining the default determination, VA properly

terminated the Contract for default. *See Decision*, at 66 (noting that "both parties agreed that 'this comes down to whether or not [Sergent] can show that there was excusable delay'" (citation omitted)); *Empire Energy Management Systems, Inc. v. Roche*, 362 F.3d 1343, 1351 (Fed. Cir. 2004) (analyzing untimely performance). Here, the Claims Court carefully addressed Sergent's various legal theories, including its contention that VA effectively modified the Contract. *Decision*, at 63–74, 76–77. We agree with the Claims Court's analysis in all respects material to the outcome. Rather than repeat the analysis on minor points, we address only Sergent's primary argument—that its delay in performance of its asbestos-abatement obligation was excusable. *See* Appellant Opening Br. at 15–20. We conclude that the asbestos-related provisions of the Contract are unambiguous and that Sergent did not create a triable issue of fact concerning its contention that VA's actions resulted in a modification of Sergent's Contract duties regarding asbestos abatement.

Contrary to Sergent's contention, *id.* at 17–18, the asbestos-abatement responsibilities imposed on Sergent by the Contract are not fairly read to be limited to the VA-estimated locations of asbestos needing abatement. The Contract directed Sergent to examine the "general notes, specifications[,] and . . . drawings" to understand the potential scale of the project. J.A. 464 (capitalization altered). The Contract explicitly clarified that VA had provided only "estimate[s]" of how much asbestos was within the abatement responsibility of Sergent and that Sergent bore the responsibility for investigating the site to identify what specific work was entailed by the abatement obligation. J.A. 972. The Contract even added that Sergent's responsibilities could exceed the estimated scope of abatement work if Sergent's renovation work disturbed other asbestos-containing materials. J.A. 464. In addition, the Contract limited VA's asbestos-abatement responsibilities to two ancillary tasks irrelevant to the present appeal.

*See* J.A. 984.  Specifically, contrary to Sergent's suggestion, *see* Appellant Opening Br. at 17–20, the Contract does not condition Sergent's performance on VA's provision of additional information about the location of asbestos needing abatement.

In short, on this crucial matter of who bore the risk as to where asbestos needing abatement would be found, nothing in the Contract makes it reasonable to view the Contract as leaving VA's financial obligation open-ended. Even if Sergent misunderstood the Contract, such misunderstanding does not excuse failure to meet the obligation imposed by the Contract.  *See* J.A. 439 (incorporating FAR 52.236-7); *Comtrol, Inc. v. United States*, 294 F.3d 1357, 1364 (Fed. Cir. 2002) (explaining that a "contractor is charged with knowledge it could have gained from contract documents"); *Geren v. Tecom, Inc.*, 566 F.3d 1037, 1045 (Fed. Cir. 2009) (explaining that a "contractor's failure to perform is not excused if impeded by the contractor's failure to comply with legal obligations").

Nor has Sergent created a triable issue of fact concerning its contention that VA *modified* the Contract when it voluntarily undertook to gather more information to give to Sergent to identify locations of needed work.  *See Decision*, at 69–70.  Pursuant to FAR 2.101, a contract and any modifications thereof must be "in writing," unless "otherwise authorized."  *See Decision*, at 69; *see also Mil-Spec Contractors, Inc. v. United States*, 835 F.2d 865, 867 (Fed. Cir. 1987).  Here, Sergent has offered "no evidence of any written modification . . . or any indication that the parties achieved a meeting of the minds to modify the written contract so as to shift asbestos-related responsibilities to [VA] or to otherwise relieve Sergent of any contractual obligations." *See Decision*, at 69.  We conclude that no assertion that the Contract was modified survives summary judgment.

## III

We have considered Sergent's other arguments and find them untimely or unpersuasive. We therefore affirm the Claims Court's judgment upholding VA's termination for default.

**AFFIRMED**